**UNITED STATES v. KATZ et al.**

**Civil Action No. 1543.**

District Court, D. Minnesota,
Fourth Division.

Sept. 18, 1947.

Victor E. Anderson, U. S. Atty., and Clifford F. Hansen, Asst. U. S. Atty., both of St. Paul, Minn., for plaintiff.

Joseph L. Nathanson, of Minneapolis, Minn., for defendants.

NORDBYE, District Judge.

The motion is based on certain supporting affidavits, and in addition on the testimony of the defendants, Reuben and Jennie F. Katz. It seems fair to find that, from the showing made on this motion, the Court has before it all of the evidence that would be adduced in support of defendants' defense, except as hereinafter stated.

At the hearing it was conceded that defendants signed Exhibit 1, Credit Statement and Application for a F. H. A. loan; Exhibit 2, Application for Exemption from Regulation W (Remodeling or Rehabilitation Which Will Supply or Maintain Housing in Private War Housing Priority Localities).; and Exhibit 3, the promissory note in the amount of $1,794.83 dated September 17, 1943, and payable in 36 monthly installments, which note is the subject of this suit. Defendants contend, however, that all these documents were signed in blank in connection with the procurement of a new furnace and oil burner for their residence at 3922 Fortieth Avenue North, Minneapolis. They testified that they knew that they were applying for a F. H. A. on monthly payments; that they knew that they were asking for credit for a period of 36 months to pay the sum of $1,561.00, the purchase price of the furnace and oil burner. Interest and insurance brought the obligation up to $1,794.83, the amount sued for herein. The furnace company arranged for the signing of the documents, and while defendants insist that all of these documents were in blank when signed, they do not state that there was any fraudulent representation, trick, or artifice as to the nature of the documents signed. They do contend that all they were told was that it was necessary to sign these documents in order to obtain priority for the furnace and oil heater and to obtain the F. H. A. loan. Such representations were true. They do contend that they did not know that they were signing a promissory note as such, but they do admit that they knew they were obligating themselves to pay in installments the purchase price of the furnace and oil burner, including the carrying charge. In fact, Reuben Katz testified as follows:

"Q. You knew, did you not, that this loan for the boiler was going through the Northwestern National Bank? A. Yes, sir.

"Q. And you knew it was to be given— you knew that the amount of the loan was for $1,561.00? A. Yes, sir.

"Q. And you knew it was to be given— the loan was to be given in payment of the new furnace which you were having installed? A. It wasn't exactly a loan. It was an F. H. A. monthly payment contract, was all we ever discussed.

"Q. You understood you were making an application for a loan? A. Under that contract, yes, sir."

Mrs. Katz testified:

"Q. What exactly were you told these instruments were? A. Well, I asked him and he said, 'They were nothing but priorities and then the F. H. A. loan, monthly payments,' and that is all he said. Priorities on the furnace and all that."

It does appear that there may have been fraudulent representations regarding the need for a new furnace and the condition of the old one. Apparently the representative of the furnace company only installed the boiler and never did install the oil burner. But the showing unquestionably establishes that the Northwestern National Bank knew of no existing equities or defenses to the note when the furnace company took the note to the bank and received the sum of $1,561 on September 20, 1943, which was the then value of the note. And moreover, it is undisputed that the United States had no notice of any equity or defenses to the note when in May, 1944, after default in the payments by the defendants, it paid to the Northwestern National Bank $1,604.64, the then value of the note. It is not disputed that plaintiff is the holder in due course for value, but defendants rely on Minnesota Statutes of 1945, and M.S.A. Section 334.12, which reads as follows:

"Instrument obtained by fraud. No person, nor the heirs or personal representatives of any person, whose signature is obtained to any bill of exchange, promissory note, or other paper negotiable under

the law merchant, shall be held thereon if it be made to appear that the signature was obtained by fraudulent representation, trick, or artifice as to the nature and terms of the contract so signed, that at the time of signing he did not believe it to be a bill of exchange, promissory note, or other paper negotiable under the law merchant, and that he was not guilty of negligence in signing such paper without knowledge of its terms. The question of negligence in any suit on such contract shall in all cases be one of fact for the jury, and the person sought to be charged thereon shall be entitled to have the question of his negligence submitted to a jury."

■ But that statute will not avail defendants under the showing herein. In order to come within the purview of that statute, there must be fraudulent representation, trick, or artifice as to the nature or terms of the contract signed. There is a complete absence of any showing that there was any fraud, trick, or artifice as to the obligation which the defendants were assuming in signing these documents. Accepting their testimony that they were signed in blank, they knew that they were asking for a F. H. A. loan and obligating themselves to pay the amount of the loan in installments. The representative of the furnace company made no fraudulent representation in that regard. The fraud of the furnace company as to the condition of the old furnace and need for a new one, and their apparent wrongdoing in failing to furnish the oil burner, does not constitute a trick or artifice or fraud within the scope or meaning of the above statute. Under the National Housing Act, 12 U.S. C.A. § 1701 et seq., certain financial institutions were designated as agencies for making loans, which were insured by the United States of America. When the furnace company represented that the papers to be signed were in connection with the procurement of a F. H. A. loan, such representations were true, and the only way a F. H. A. loan could be procured would be to proceed as the furnace company did. Certainly, under these circumstances, and in light of the showing, the contention that there was fraud, trick, or artifice as to the nature and terms of the contract, is utterly devoid of any proof. In fact, the testimony of the defendants themselves unmistakably negates any such contention.

■ Under the statute, Section 334.12, if there is no fraud, trick, or artifice as to the nature or terms of the contract so signed, the other elements of the statute which must be established become immaterial. Therefore, we are not concerned with whether defendants did not believe the document to be a promissory note, nor are we concerned with whether the defendants were negligent in signing the papers. In other words, defendants must sustain all three elements: (1) That their signatures were obtained by fraudulent representation, trick, or artifice as to the nature and terms of the contract so signed; (2) that they did not believe the document to be a promissory note; and (3) that they were not guilty of negligence in signing such paper without knowledge of its terms. Heller v. Cuddy, 172 Minn. 126, 214 N.W. 924.

There being no issue as to the liability of the defendants on the note in the hands of the United States Government, that issue will be, and hereby is, stricken from the defense. The only remaining issue is the extent of the lien on the premises under the Constitution of the State of Minnesota, and that question depends upon the value of the improvements. Plaintiff recognizes that that issue is a matter for judicial determination and must await proof at the trial. An exception is allowed to the defendants.